UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALICE M. SOTO, | ) | 1:05-cv-01336-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 1) |
| v. | ) | |
| | ) | ORDER DIRECTING THE ENTRY OF |
| JO ANNE B. BARNHART, | ) | JUDGMENT FOR DEFENDANT MICHAEL J. |
| Commissioner of Social | ) | ASTRUE, COMMISSIONER OF SOCIAL |
| Security, | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | ALICE M. SOTO |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff is represented by counsel and is proceeding in forma pauperis with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI) benefits under Titles II and XVI of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment. The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument to the Honorable

1

1  Sandra M. Snyder, United States Magistrate Judge.[1]

2      I. <u>Procedural History</u>

3      On March 25, 2003, Plaintiff applied for DIB and SSI,

4  alleging disability since June 2, 1998, due to chronic back pain

5  and injury to the upper and lower back, numb legs, aching wrists,

6  and mental and kidney problems. (A.R. 59-61, 296-98, 66, 15.)

7  After Plaintiff's claim was denied initially and on

8  reconsideration, Plaintiff requested, and appeared at, a hearing

9  held before the Honorable James E. Ross, Administrative Law Judge

10 (ALJ) of the Social Security Administration (SSA), on January 27,

11 2005. Plaintiff, who elected to proceed without counsel,

12 testified. (A.R. 24-42, 299-300, 15, 18, 304-34.) Additional

13 evidence was submitted and reviewed after the hearing. (A.R. 15.)

14 On April 25, 2005, the ALJ denied Plaintiff's application for

15 benefits. (<u>Id.</u> at 15-18.) Plaintiff appealed the ALJ's decision

16 to the Appeals Council. After the Appeals Council denied

17 Plaintiff's request for review on August 20, 2005, Plaintiff

18 filed the complaint in this action on October 24, 2005. (<u>Id.</u> at

19 6-8.) Briefing commenced on June 8, 2007, and was completed with

20 the filing on Defendant's opposition on August 7, 2007.

21     II. <u>Standard and Scope of Review</u>

22     Congress has provided a limited scope of judicial review of

23 the Commissioner's decision to deny benefits under the Act. In

24 reviewing findings of fact with respect to such determinations,

25 the Court must determine whether the decision of the Commissioner

26 is supported by substantial evidence. 42 U.S.C. § 405(g).

27

28     [1]The Honorable Robert E. Coyle ordered the case assigned to the undersigned Magistrate Judge for all purposes on June 8, 2006.

1  Substantial evidence means "more than a mere scintilla,"
2  Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a
3  preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10
4  (9th Cir. 1975). It is "such relevant evidence as a reasonable
5  mind might accept as adequate to support a conclusion."
6  Richardson, 402 U.S. at 401. The Court must consider the record
7  as a whole, weighing both the evidence that supports and the
8  evidence that detracts from the Commissioner's conclusion; it may
9  not simply isolate a portion of evidence that supports the
10 decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th
11 Cir. 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).
12 It is immaterial that the evidence would support a finding
13 contrary to that reached by the Commissioner; the determination
14 of the Commissioner as to a factual matter will stand if
15 supported by substantial evidence because it is the
16 Commissioner's job, and not the Court's, to resolve conflicts in
17 the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th
18 Cir. 1975).

19      In weighing the evidence and making findings, the
20 Commissioner must apply the proper legal standards. Burkhart v.
21 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
22 review the whole record and uphold the Commissioner's
23 determination that the claimant is not disabled if the
24 Commissioner applied the proper legal standards, and if the
25 Commissioner's findings are supported by substantial evidence.
26 See, Sanchez v. Secretary of Health and Human Services, 812 F.2d
27 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If
28 the Court concludes that the ALJ did not use the proper legal

3

standard, the matter will be remanded to permit application of the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th Cir. 1987).

III. <u>Disability</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the

impairment, 20 C.F.R. § 404.1520 (2005);[2] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is essentially the same. <u>See</u> 20 C.F.R. § 416.920.

Here, the ALJ concluded that the period of disability to be considered was from June 2, 1998 through December 31, 2003, the date last insured. (A.R. 15.) Plaintiff had a severe impairment of chronic low back pain of unclear etiology but no impairment or combination of impairments that met or medically equaled a listed impairment. Plaintiff retained the residual functional capacity (RFC) to lift and carry twenty pounds occasionally and ten pounds frequently and stand and/or walk six hours in an eight-hour work day with occasional stooping, crouching, crawling, and climbing;

---

[2] All references are to the 2005 version of the Code of Federal Regulations unless otherwise noted.

hence, Plaintiff could perform her past relevant work as a receptionist. (A.R. 18.)

    IV. <u>Plaintiff's Subjective Complaints</u>

    Plaintiff challenges the ALJ's finding that Plaintiff's subjective complaints and alleged functional limitations were not as severe as asserted and were only partially credible. (A.R. 18.) Plaintiff argues that the record did not support the ALJ's findings; further, the medical evidence was fully consistent with the symptoms and limitations to which Plaintiff testified, and the ALJ's reasons were not clear and convincing.

    The court in <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir. 2007), summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. See <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" <u>Morgan</u>, 169 F.3d at 599 (quoting <u>Lester</u>, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." <u>Id.</u> Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." <u>Id.</u>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. See S.S.R. 02-1p (Cum. Ed.2002), available at Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R. 96-7p (Cum. Ed.1996), available at 61 Fed.Reg. 34,483-01 (July 2, 1996). An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. See 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); see

6

Daniels v. Apfel, 154 F.3d 1129, 1131 (10th Cir.1998)
(concluding that ALJ's decision at step three of the
disability determination was contrary to agency
regulations and rulings and therefore warranted
remand). Factors that an ALJ may consider in weighing a
claimant's credibility include reputation for
truthfulness, inconsistencies in testimony or between
testimony and conduct, daily activities, and
"unexplained, or inadequately explained, failure to
seek treatment or follow a prescribed course of
treatment." Fair, 885 F.2d at 603; see also Thomas, 278
F.3d at 958-59.

The factors to be considered in weighing credibility are set

forth in the regulations and pertinent Social Security rulings.

They include the claimant's daily activities; the location,

duration, frequency, and intensity of the claimant's pain or

other symptoms; factors that precipitate and aggravate the

symptoms; the type, dosage, effectiveness, and side effects of

any medication the claimant takes or has taken to alleviate the

symptoms; treatment, other than medication, the person receives

or has received for relief of the symptoms; any measures other

than treatment the claimant uses or has used to relieve the

symptoms; and any other factors concerning the claimant's

functional limitations and restrictions due to pain or other

symptoms. 20 C.F.R. §§ 404.1529, 416.929; S.S.R. 96-7p.

With respect to the course of analysis directed by the

regulations, the ALJ is first obligated to consider all symptoms

and the extent to which the symptoms can reasonably be accepted

as consistent with the objective medical evidence and other

evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Once it is

determined that there is a medically determinable impairment that

could reasonably be expected to produce the claimant's symptoms,

the ALJ must then evaluate the intensity and persistence of the

symptoms to determine how the symptoms limit the capacity for work. §§ 404.1529(b), (c); 416.929(b), (c). The ALJ will consider all available evidence. To the extent that the claimant's symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, the symptoms will be determined to diminish the claimant's capacity for basic work activities. §§ 404.1529(c)(4); 416.929(c)(4). A claimant's statements will not be rejected solely because unsubstantiated by the available objective medical evidence. §§ 404.1529(c)(2); 416.929(c)(2).

Further, the pertinent Social Security Ruling provides in pertinent part that an ALJ has an obligation to articulate the reasons supporting the analysis:

> ...When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

S.S.R. 96-7p at 4.

1    The ALJ recited Plaintiff's complaints concerning her
2  ability to sit twenty minutes, her kidneys' holding water, her
3  treatment for migraines and stress, a recent MRI that showed
4  degenerative disc disease, and a recommendation from Dr. Holmes
5  that she have back surgery; he also noted her wearing of a TENS
6  unit and her intention to see a back and hand specialist once her
7  insurance approved such a consultation. (A.R. 17, 318-20, 330-
8  31.) The ALJ concluded that Plaintiff had impairments that could
9  reasonably be expected to produce some of the symptoms Plaintiff
10 alleged, but the degree of limitation she alleged was not
11 supported by the objective medical evidence and was not entirely
12 credible. (A.R. 16.)

13    The ALJ relied on Plaintiff's activities of daily living as
14 she testified to them and as she had reported them to her
15 doctors. (A.R. 16-17.) A claimant's ability to engage in
16 activities of daily living to the extent that he or she spends a
17 substantial part of the day engaged in pursuits involving the
18 performance of physical functions that are transferable to the
19 work setting is relevant; a specific finding as to this fact may
20 be sufficient to discredit a claimant's allegations. Morgan v.
21 Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir.
22 1999); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).
23 Further, included in the factors that an ALJ may consider in
24 weighing a claimant's credibility are the claimant's reputation
25 for truthfulness; inconsistencies either in the claimant's
26 testimony or between the claimant's testimony and the claimant's
27 conduct, daily activities, or work record; and testimony from
28 physicians and third parties concerning the nature, severity, and

9

effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

The record supports the ALJ's conclusion that Plaintiff admittedly could perform all the activities of daily living associated with caring for a young child, including lifting and carrying her. Plaintiff testified that her daughter, who was two years old at the time of the hearing, lived with her; Plaintiff was at home with her daughter all day, and she performed some housecleaning, cooked light meals, washed and did the dishes a little, and swept but did not vacuum and could not pick up her daughter. (A.R. 331.) Plaintiff stated in an exertional daily activities questionnaire dated April 13, 2003, that she lifted her baby only when the baby was hungry and wanted to be held; she lifted the baby and then sat down with her, and she carried her three times per day to the bedroom; she also carried groceries; she did her own grocery shopping, washed dishes and made her bed for ten minutes each, and spent three hours doing laundry; she drove for thirty minutes twice a week to visit family. (A.R. 87.) In May 2003 on a daily activities questionnaire, Plaintiff stated that she cooked simple meals for herself daily, shopped for groceries and clothing by herself, and did all her household chores at her own pace by herself. (A.R. 90.)

Plaintiff had reported to consulting psychiatric examiner Dr. Richard W. Cochran, M.D., in February 2000 that she was not married but had a fifteen-year-old son who lived with her; her boyfriend did most of the shopping and carrying of the heavy groceries; Plaintiff did not do heavy laundry or vacuum, wash the car, mow the lawn, or move furniture, but she could drive a car

for half an hour. Typically she would arise, dust, do light
housework, help her son off to school, use a treadmill depending
on her pain, visit her aunt, take her two dogs for a walk, dine
with her boyfriend, and watch TV. (A.R. 189-90.) In September
2003, Plaintiff informed consulting, examining orthopedist Dr.
Benjamin Chang that she took care of her daughter, who was eight
and one-half months old, and did light chores. (A.R. 255.) In
September 2003, she informed consulting psychiatric examiner
Charles House, Ph.D., that she lived with her husband and two
children under twenty-one years of age, including her one-year-
old baby; although sometimes she stayed in bed, she showered,
cleaned the house and took care of the kids, did the dishes and
the laundry, and cooked. (A.R. 269-70.)

The Court concludes that the ALJ's reliance on the nature
and extent of Plaintiff's activities of daily living, as
demonstrated by substantial evidence in the record, was clear and
convincing. Plaintiff's daily activities, as well as some of her
reports of her daily activities, were inconsistent with the
degree of subjective limitation that she alleged.

The second reason assigned for the ALJ's credibility finding
was that the objective medical evidence did not support the
degree of limitation claimed. (A.R. 16.) The ALJ summarized
Plaintiff's pertinent medical history. (A.R. 16-17.)

Substantial evidence supported this reasoning because the
great bulk of the medical records reflected only mild findings.
Plaintiff was injured at work in June 1998. An orthopedic
examination by Dr. Goddard in October 1998 resulted in a
diagnosis of cervical/thoracic/lumbar sprain with radiculitis;

Plaintiff had complained of back pain, and objective findings included tenderness over the cervical and thoracic spine and upper back, full range of motion of the neck with minimal pain, full range of motion of the back without spasm but with some pain, and full shoulder, elbow, wrist and hand motions. (A.R. 114-18.) Plaintiff was treated by a chiropractor, Dr. Tam T. Vo, who in March 1999 found spine strain with radiculitis. (A.R. 119-23.)

As the ALJ noted (A.R. 16), there were objective test results that were essentially normal. In October 1999, an MRI of the neck reflected mild degenerative disc disease at C2-3 and C5-6 with no evidence of disc bulging or herniation. (A.R. 143-44.) In May 2003, an MRI of the lumbar spine revealed no significant degenerative disc disease, herniation, or stenosis, and only mild facet arthropathy at L4-5 and L5-S1. (A.R. 243.)

In September 2003, consulting, examining orthopedist Dr. Chang completed an essentially normal exam except for findings of mild tenderness on palpation over the lower lumbar spine but no spasm, crepitus, effusion, or deformities, and normal muscle strength and tone. The diagnosis was chronic low back pain, possibly from resolving radiculopathy and facet syndrome. Dr. Chang opined that Plaintiff had the RFC to perform light work, including lifting and carrying ten pounds frequently and twenty occasionally, and walking, sitting, and standing about six hours in an eight-hour workday with normal breaks. (A.R. 254-57, 256.)

State agency medical consultants Drs. Corazon C. David and another whose name is illegible (A.R. 267) opined in June and September 2003 that Plaintiff could lift and carry twenty pounds

occasionally and ten pounds frequently, and stand, sit, and/or walk six hours per work day with only occasional climbing, stooping, crouching, and crawling (A.R. 260-67.)

In summary, with respect to Plaintiff's physical condition, substantial evidence supported the ALJ's findings that the objective medical evidence did not support Plaintiff's claims of constant, disabling pain.

With respect to Plaintiff's mental condition, Dr. Richard W. Cochran, M.D., examined Plaintiff in November and reported in December 1999, and again examined her in January and reported in February 2000 as a qualified medical examiner in a separate state proceeding. (A.R. 185-201.) In December he diagnosed depression not otherwise specified and opined that she was temporarily partially disabled psychologically; he prescribed an anti-depressant for sleep, and psychological care for six to nine months. With respect to findings, he noted complaints of pain, with average intelligence, good memory and judgment, and poor insight. (A.R. 200-01.)

In February 2000 Dr. Cochran opined that Plaintiff was psychologically temporarily partially disabled. He noted that a mental status exam revealed that Plaintiff looked depressed and anxious over her job injury and how it changed her life; she was well-oriented and had average intelligence, good memory and judgment, but poor insight into her depression. (A.R. 190.) Based on objective findings of Plaintiff's appearing depressed and anxious, the doctor repeated his previous diagnosis, and he assigned a global assessment of functioning (GAF) of 50. He assessed a slight impairment of her ability to comprehend and

13

follow instructions with respect to simple, repetitive tasks on days of severe pain; a moderate impairment of the ability to maintain a work pace appropriate to a given work load because of a lack of physical and mental stamina to complete a normal work week at a consistent pace due to her depression and low energy and guarding against any further workplace injury; a slight impairment of the ability to relate to others beyond giving and receiving instructions and of the ability to influence people due to irritability, depression, unassertiveness, and touchiness; moderate impairment of the ability to make generalizations or decisions without immediate supervision because she lacked self-confidence and had reduced attention span (remainder illegible); and slight impairment of the ability to accept and carry out responsibility for direction, control, and planning because it was hard for her to make plans due to the interruption and discontinuance of her computer training by an insurance company, her severe daily low back pain with radiation to the left leg, her preoccupation with her physical welfare, her self-absorption, and depression. (A.R. 194-97.) Dr. Cochran recommended treatment with antidepressant medication, cessation of smoking, psychotherapy for six to twelve months for her pain and depression, and a referral to an orthopedic surgeon. (A.R. 197.)

In September 2003, Charles House, Ph.D., completed a comprehensive consultative psychiatric examination and evaluation of Plaintiff. (A.R. 268-74.) He noted that Plaintiff, who complained of constant pain, depression, and anxiety relating to her medical condition, had no trouble sitting quietly for thirty-five minutes in the examination office. (A.R. 269.) Plaintiff was

14

cooperative and pleasant, speech was normal and productive,
narrative was cogent and focused, and the stream of mental
activity was linear and goal-directed, with logical and well-
organized thinking; her mood was mildly anxious and depressed;
she scored perfectly on the mini-mental status exam and thus
reflected intact cognitive processing with no evidence of an
impairment in attention, concentration, and memory; and she was
able to maintain good concentration, persistence, and pace. (A.R.
271-72.) Her intellectual level was average and was accompanied
by commensurate problem-solving skills, and there was no evidence
of a cognitive impairment or thought disorder; her memory was
intact. (A.R. 272-73.)

Dr. House diagnosed adjustment disorder with mixed emotional
features, anxious and depressed mood, chronic and enduring
circumstances, mild; her GAF was 65-70. (A.R. 272-73.) Her
prognosis for the adjustment disorder was guarded, and it was not
likely to improve significantly during the next twelve months.
(Id. at 273.) He concluded that with respect to Plaintiff's
mental condition, Plaintiff could perform simple, repetitive
tasks and would have no difficulty performing more complex tasks
because of her intelligence, intact cognitive skills, lack of
difficulty in handling two- and three-step problem resolution,
and intact attention span and memory. She would not have
difficulty accepting supervision or interacting appropriately
with coworkers and the general public, or maintaining regular
attendance in a work situation. (A.R. 273-74.)

In October 2003, state agency physician E. Harrison, M.D.,
opined that Plaintiff suffered from an adjustment disorder, and

15

1   that no RFC assessment was necessary. (A.R. 277-78.)[3]

2       Again, although Dr. Cochran's opinion was more limiting, the
3   objective medical evidence concerning Plaintiff's mental
4   condition did not support Plaintiff's claims of pain and
5   depression. The only negative finding from the two psychological
6   experts' examinations was Dr. Cochran's finding of poor insight
7   and anxious, depressed appearance; all other indications were
8   average, normal, or good. Although the inconsistency of objective
9   findings with subjective claims may not be the sole reason for
10  rejecting subjective complaints of pain, Light v. Chater, 119
11  F.3d 789, 792 (9th Cir. 1997), it is one factor which may be
12  considered with others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th
13  Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir.
14  1999).

15      The Court concludes that substantial evidence supported the
16  ALJ's conclusion that the objective medical evidence did not
17  support Plaintiff's subjective complaints, and the ALJ's
18  reasoning was clear and convincing in force.

19      The ALJ also relied on the nature of Plaintiff's treatment
20  and noted that Plaintiff's treatment in 1999 included injections,
21  medications, and a TENS unit. (A.R. 16.) In 2001, Plaintiff was
22  considered to be "permanent and stationary" by Dr. Holmes with
23  limitations of no heavy work and no repetitive pushing or pulling
24  with the left upper extremity (A.R. 16, 216, 202-20.) The ALJ
25  further noted that in May 2003, a physical therapy discharge
26  summary reported that Plaintiff was terminated from the program

27

28      [3] Plaintiff noted in briefing that portions of the record of this report were missing. Defendant subsequently
        filed the additional record. (A.R. 277A-277I.)

because her limitations were not musculoskeletal. (A.R. 16.) The record contains a patient discharge summary that reflects that the numbness that Plaintiff reported was not in a dermatomal distribution and did not change with manual technique; further diagnostics were required, and Plaintiff was not appropriate for therapy because her symptoms did not appear to be musculoskeletal. (A.R. 246, 245-50.) The ALJ further noted that there had been no subsequent treatment except routine medication. (A.R. 16.) Plaintiff does not contest this finding.

It is established that an ALJ may rely on the conservative nature of treatment or a lack of treatment in rejecting a claimant's subjective complaint of pain. Johnson v. Shalala 60 F.3d 1428, 1433-34 (9th Cir. 1995). The record contains substantial evidence supporting the ALJ's conclusion that Plaintiff's treatment for her allegedly disabling pain was largely conservative.

The Court notes that Plaintiff used a TENS unit and complained of pain throughout the period reflected in the medical records. Although there might have been factors supporting Plaintiff's credibility, the ALJ nevertheless articulated clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's subjective complaints of pain. Cf. Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004). Accordingly, the Court concludes that the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints of pain to the extent alleged, and that the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that

the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

V. Multiple Impairments

Plaintiff argues that the ALJ failed to consider all Plaintiff's impairments and the combined impact of all her impairments.

At step two, the Secretary considers if claimant has "an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). This is referred to as the "severity" requirement and does not involve consideration of the claimant's age, education, or work experience. Id. The step-two inquiry is a de minimis screening device to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. 153-54 (1987). The Secretary is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of [sufficient medical] severity." 42 U.S.C. § 1382c(a)(3)(F).

Basic work activities include the abilities and aptitudes necessary to do most jobs, such as physical functions of walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

An impairment or combination thereof is not severe when

18

medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); Soc. Sec. Ruling 85-28; Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996). The ALJ is responsible for determining the effect of an impairment upon the other impairments and its effect on the claimant's ability to work and general health. Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003). An ALJ must adequately explain his evaluation of the combined effects of impairments. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (holding that a finding that the claimant had failed to provide evidence of medically determinable impairments that met or equaled the listings or duration requirements of the Act was not sufficient adequately to explain the evaluation of alternative tests and the combined effects of the impairments).

Further, an erroneous finding at step two can precipitate an error at step five concerning the determination of how a combination of all a claimant's impairments affected the claimant's functional capacity to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

A mental or physical impairment is a basis for disability where it is medically determinable, that is, it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques and established by medical evidence

consisting of signs, symptoms, and laboratory findings, as
distinct from a statement of symptoms. 20 C.F.R. §§ 404.1505(a),
404.1508, 416.905(a), 416.908. An impairment must have lasted or
must be expected to last for a continuous period of at least
twelve months. 20 C.F.R. §§ 404.1509, 416.909. It is the
claimant's burden to establish the existence of a medically
determinable physical or mental impairment not only by symptoms,
but also by medical signs (anatomical, physiological, or
psychological abnormalities that can be shown by medically
acceptable clinical diagnostic techniques) or laboratory
findings. Ukolov v Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005).
Otherwise, the individual must be found not disabled at step two
of the sequential evaluation process. Id. (quoting Soc. Sec.
Ruling 96-4p). Plaintiff has the burden to produce sufficient
evidence that he or she actually suffers from an impairment, or
else it need not be factored in to a disability analysis. Macri
v. Chater, 93 F.3d 540, 544 (9th Cir. 1996). Where the evidence
is not sufficient to suggest that a claimant suffered multiple
impairments, or a combination thereof, then it is not error to
fail to do a multiple impairment analysis. Macri v. Chater, 93
F.3d 540, 545 (9th Cir. 1996) (where the evidence did not
establish that medication for a claimed impairment was prescribed
during the claimant's period of disability insurance covered
status).

Here, Plaintiff argues that Defendant considered only
Plaintiff's chronic low back pain and Plaintiff's depression. The
ALJ determined that Plaintiff's chronic back pain was severe, and
her mild situational depression was only slight. (A.R. 15-16.)

1    Plaintiff cites as error the ALJ's failure to consider

2    positive O'Donohue Maneuver, Kemp's test, Linder's test, Ely's

3    test, Yeoman's test, sprain of Plaintiff's neck, thoracic area,

4    and low back, lumbosacral disc bulge syndrome with radicular pain

5    radiating to her left leg and thoracic and upper left shoulder

6    strain, thoracic spine sprain and strain with radiculitis to the

7    left arm and lumbar spine sprain and strain with radiculitis to

8    the left leg, left cervical and lumbosacral radiculitis,

9    degenerative disc disease from C2-3 down through C5-6, depression

10   and unspecified psychological facts affecting physical condition,

11   facet arthropathy with effusions in the facet joints indicating

12   loss of cartilage of L4-5, facet arthropathy at L5-S1, adjustment

13   disorder with mixed emotional features, anxious and depressed

14   mood with chronic and enduring circumstances, hyperlipidemia,

15   migraine headaches, and hypertension. (Brief pp. 13-14.)

16   The ALJ fully considered Plaintiff's back injury, which was

17   initially diagnosed as involving strain or sprain of the

18   cervical, thoracic, and lumbar spine with radiculitis, and which,

19   as the longitudinal record reflects, also eventually involved

20   degenerative disc disease and mild facet arthropathy; it would be

21   disingenuous to suggest that despite the ALJ's recitation of the

22   medical record and of Plaintiff's multi-faceted spinal symptoms,

23   there was a failure to consider Plaintiff's spinal impairment.

24   (A.R. 16.) It is permissible not to factor in to a multiple

25   impairment analysis a symptom that the ALJ finds is attributable

26   to, and thus may be treated in conjunction with, another

27   impairment that has been considered by the ALJ. See Celaya v.

28   Halter, 332 F.3d 1177, 1181 (9th Cir. 2003) (holding in part that

21

headaches attributable to high blood pressure, another impairment considered by the ALJ, were not an independent condition requiring separate factoring into the analysis of impairments). Here, it appears that the ALJ fully considered Plaintiff's many complaints of pain from her spinal injury and condition. Further, many of the items that Plaintiff here charges were omitted from the ALJ's analysis (O'Donohue Maneuver, Kemp's test, Linder's test, Yeoman's test, and Ely's test) were in actuality diagnostic devices ("Thoracolumbar Spine Orthopedic Tests") that were used by Plaintiff's chiropractor to discover and evaluate symptoms. (A.R. 128, 124-30 [report of Michael Dittus, D.C., from October 1998, recording an examination that occurred on October 16, 1998].)

       As to Plaintiff's kidneys, high cholesterol, and high blood pressure, Plaintiff contacted the SSA in August 2004 and reported that as of May 2004, she had been having kidney problems, high blood pressure for which she took medication, and high cholesterol for which she also took medication. (A.R. 113.) The ALJ obtained records from treating physician Dr. C. Leung and nurse practitioner Rosemarie Sandoval for the period May 2004 through February 2005. (A.R. 279-95.) Plaintiff cites laboratory studies of May 2004 indicating elevated triglycerides of 281 and HDL too low at 33. (A.R. 289.) Plaintiff asserts that a progress note from May 2004 reflected that Plaintiff was suffering from hyperlipidemia, but the portion of the note pertaining to the impression is illegible. (A.R. 287.) In July 2004, a progress note reflects that Plaintiff had hypertension, with a blood pressure reading of 138/90 with edema. (A.R. 283.) However,

progress notes from August and October 2004 reflect blood
pressure readings of 129/70 and 116/60. (A.R. 282.) Readings from
February 2005 were 110/70 and 102/70. (A.R. 280.)

It therefore appears that Plaintiff's hypertension was
controlled with treatment. Further, Plaintiff has not cited to
evidence that she suffered any functional impairment from either
her cholesterol readings or hypertension. It does not appear that
the ALJ erred in not factoring in these conditions of Plaintiff.
However, if there was an error, the Court concludes that no
reasonable ALJ who had fully credited the evidence could have
reached a different disability result; hence, the error was
harmless. See, Stout v. Commissioner, 454 F.3d 1050, 1056 (9th
Cir. 2006).

Plaintiff testified that she had suffered migraine headaches
once a month for years, and they lasted from three to seven days;
she treated them by taking medication which sometimes worked and
sometimes did not, and by lying down in a darkened room. (A.R.
332.) The only portion of the medical records cited by Plaintiff
that pertains to migraine headaches is a progress note from May
4, 2004, in which Plaintiff complained of migraine headaches; it
does not indicate a diagnosis of migraine headaches or any
treatment for them. (A.R. 288.) This note was received by the
Defendant after the hearing. (A.R. 3.)

Plaintiff has not provided the needed medical evidence to
support a finding that she suffered a medical impairment of
migraine headaches. To establish an impairment, the claimant must
offer not only symptoms, which are the claimant's perception or
description of the impact of his or her impairment, but also

signs or findings, consisting of anatomical, physiological, or
psychological abnormalities that can by shown by medically
acceptable clinical diagnostic techniques. <u>Ukolov v. Commissioner</u>
<u>of Social Security</u>, 420 F.3d 1002, 1005 (9th Cir. 2005). Here,
Plaintiff has not provided signs, findings, or an opinion that
Plaintiff suffered from the medically determinable impairment of
migraine headaches. Thus, she has not met her burden of proof of
suffering an impairment, and the ALJ's failure expressly to
figure in such a condition in his discussion was not erroneous.

With respect to Plaintiff's mental condition, the Court
rejects Plaintiff's argument that her adjustment disorder and/or
depression were inadequately considered by the ALJ. Plaintiff
asserts that mixed emotional features, anxious and depressed mood
with chronic and enduring circumstances, and depression NOS with
psychological factors affecting physical condition were ignored
by the ALJ. However, the record is to the contrary. These
phenomena were reflected in the medical record that was
considered by the ALJ, and they were part and parcel of the
"situational depression" found to be only a slight impairment by
the ALJ, who expressly considered expert opinions concerning both
Plaintiff's depression and her adjustment disorder, and expressly
concluded that the evidence did not justify a finding of any
significant mental limitations. (A.R. 193, 201, 273, 15-17.) The
ALJ also expressly concluded that Plaintiff had no combination of
impairments, severe or otherwise, that met or equaled any
listing, and thus the record reflects that he considered 20
C.F.R. Part 404, Subpart P, Appendix 1, § 12.04, which included
affective disorders characterized by a disturbance of mood. (A.R.

16.)

Therefore, the Court concludes that the ALJ did not err in his consideration of Plaintiff's impairments.

VI. Rejection of the Treating Physician's Opinion

Plaintiff contends that the ALJ erred in failing to state specific, legitimate reasons to support his rejection of Dr. Cochran's opinion that Plaintiff lacked normal energy, suffered cognitive impairment, and lacked the physical and mental stamina to complete a normal work week. (A.R. 194.) Plaintiff is referring to a portion of Dr. Cochran's opinion rendered in February 2000, in which with respect to Plaintiff's ability to maintain a work pace appropriate to a given work load, he opined that Plaintiff was moderately limited. He stated the following under the heading "SUPPORTING DATA":

> She lacks the physical and mental stamina to complete a normal work week at a consistent pace. She is a depressed person with low energy. Her problems of psychological energy depletion are due to the residuals of her depression and would produce impairment in her work involvement, motivation, and stamina. She also has become overly cautious and is defensive and fearful of further injury in the work place. This guardedness would reduce her work speed.

(A.R. 194.) Dr. Cochran also stated that she was slightly impaired in her ability to perform simple, repetitive tasks based on the abnormality of her memory and her frequent forgetting of dates and the location of things placed by her in her apartment. (Id.)

An ALJ may disregard a treating physician's opinion that is controverted by other opinions only by setting forth specific, legitimate reasons for doing so that are based on substantial

1  evidence in the record. <u>Rodriquez v. Bowen</u>, 876 F.2d 759, 762

2  (9th Cir. 1989). This burden is met by stating a detailed and

3  thorough summary of the facts and conflicting clinical evidence,

4  stating the interpretation of the evidence, and making findings.

5  <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir 1986).

6      Here, the ALJ did not recite the precise language used by

7  Dr. Cochran. However, in the pertinent part of the ALJ's decision

8  concerning Dr. Cochran's opinion, the ALJ stated:

9          As Qualified Medical Examiner in February 2000, Dr.
           Cochran reiterated the same diagnosis [depression not
10         otherwise specified] and rated the GAF at 50, but
           he concluded that the claimant's limitations in the
11         requisite work-related abilities were only slight
           to moderate (Exhibit 5F, pp. 1-13 [A.R. 185-97]),[4]
12         rendering his opinion internally inconsistent.

13  (A.R. 16.) The ALJ further reviewed the conflicting opinion of

14  Dr. House, noting that Dr. House assigned a GAF of 70 nine months

15  later, relied on Plaintiff's ability to perform all of the

16  activities of daily living involved in the cleaning of a house

17  and caring for two children, and concluded that Plaintiff had no

18  difficulty completing complex tasks. (A.R. 16-17.) The ALJ later

19  referred to the opinion of the state agency medical consultants

20  that Plaintiff retained the RFC to perform light work with

21  postural limitations and had no severe mental impairment. (A.R.

22  17.) The ALJ noted that Plaintiff admitted that she cooked and

23  cared for her daughter, and that the evidence did not justify a

24  finding of any significant mental limitations.

25      Here, the ALJ's reasoning in support of his rejection of Dr.

26  Cochran's assessment was supported by substantial evidence and

27

28

[4] The ALJ referred to Exhibit 5F, but it is clear that he intended to refer to Exhibit 6F.

was specific and legitimate. Dr. Cochran assigned a GAF of 50 to
Plaintiff. (A.R. 193.) A GAF, or global assessment of
functioning, is a report of a clinician's judgment of the
individual's overall level of functioning and is used to plan
treatment and to measure the impact of treatment as well as
predicting its outcome. American Psychiatric Association,
<u>Diagnostic and Statistical Manual of Mental Disorders</u> at 30 (4th
ed.). A GAF of 50 indicates serious symptoms or a serious
impairment in social, occupational, or school functioning. (<u>Id.</u>
at 32.)

Yet Dr. Cochran's assessment of Plaintiff's functional
impairments was inconsistent because it reflected only slight or
moderate impairments (only slight impairment of her ability to
comprehend and follow instructions with respect to simple,
repetitive tasks on days of severe pain, her ability to relate to
others beyond giving and receiving instructions and to influence
people due to irritability, depression, unassertiveness, and
touchiness, and her ability to accept and carry out
responsibility for direction, control, and planning because it
was hard for her to make plans due to the interruption and
discontinuance of her computer training by an insurance company,
her severe daily low back pain with radiation to the left leg,
her preoccupation with her physical welfare, her self-absorption,
and depression; and only moderate impairment of her ability to
maintain a work pace appropriate to a given work load because of
a lack of physical and mental stamina to complete a normal work
week at a consistent pace due to her depression and low energy
and guarding against any further workplace injury, and her

1  ability to make generalizations or decisions without immediate

2  supervision because she lacked self-confidence and had reduced

3  attention span). (A.R. 194-97.)

4      It is established that it is appropriate for an ALJ to

5  consider the absence of supporting findings, and the

6  inconsistency of conclusions with the physician's own findings,

7  in rejecting a physician's opinion. Johnson v. Shalala, 60 F.3d

8  1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016,

9  1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th

10  Cir. 1989).

11      The Court concludes that the ALJ stated specific, legitimate

12  reasons, supported by substantial evidence, for limiting the

13  weight he put on the opinion of Dr. Cochran. The ALJ was not

14  required to address each discrete part of Dr. Cochran's

15  assessment of the limitations on Plaintiff; it was sufficient for

16  the ALJ to consider Dr. Cochran's opinion and to state specific,

17  legitimate reasons for the weight he put on it. Further, the ALJ

18  appropriately relied on the opinion of the consulting, examining

19  psychologist, Dr. House, that Plaintiff could perform simple,

20  repetitive tasks and was not mentally limited, as consistent with

21  Plaintiff's own testimony and her capacity as reported to other

22  medical sources. (A.R. 16-17.) The opinion of Dr. House was based

23  on independent clinical findings and thus constituted substantial

24  evidence that was supportive of the ALJ's reasoning. The

25  contradictory opinion of a nontreating but examining physician

26  constitutes substantial evidence, and may be relied upon instead

27  of that of a treating physician, where it is based on independent

28  clinical findings that differ from those of the treating

28

physician. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).

VII. <u>Interpretation of Dr. Chang's Assessment</u>

Plaintiff argues that the functional assessment of Dr. Chang, which was relied upon by the ALJ in formulating Plaintiff's RFC, was improperly interpreted by the ALJ. With respect to Plaintiff's functional assessment, Dr. Chang stated in pertinent part:

> The claimant is expected to be able to stand, walk, and sit for about six hours in an eight-hour workday with normal breaks.

(A.R. 256.) The ALJ characterized this assessment as being that Plaintiff could "stand and/or walk 6 hours in an 8-hour workday" (A.R. 16), but Plaintiff argues that it would have been an "equally reasonable" interpretation to conclude that Dr. Chang meant that Plaintiff could not do each of the activities for six hours each, but that Plaintiff could only do a combination of the activities for six hours. (Brief at p. 14.)

Defendant correctly contends that Plaintiff's argument is premised on a faulty understanding of the ALJ's authority to interpret the evidence. To the extent that evidence is inconsistent, conflicting, or ambiguous, it is the responsibility of the ALJ to resolve any conflicts and ambiguity. <u>Morgan v. Commissioner</u>, 169 F.3d 595, 603 (9th Cir. 1999). Because the ALJ has authority to interpret ambiguous medical opinions, <u>Matthews v. Shalala</u>, 10 F.3d 678, 680 (9th Cir. 1993), the Court must defer to the ALJ's decision. Here, the ALJ's interpretation was reasonable. Further, Dr. Chang's assessment was substantial evidence that supported the ALJ's RFC. The full range of light

work requires standing or walking, off and on, for a total of
approximately six hours of an eight-hour workday; sitting may
occur intermittently during the remaining time. Soc. Sec. Ruling
83-10 at 5.

    VII. <u>Disposition</u>

    Based on the foregoing, the Court concludes that the ALJ's
decision was supported by substantial evidence in the record as a
whole and was based on the application of correct legal
standards.

    Accordingly, the Court AFFIRMS the administrative decision
of the Defendant Commissioner of Social Security and DENIES
Plaintiff's Social Security complaint.

    The Clerk of the Court IS DIRECTED to enter judgment for
Defendant Michael J. Astrue, Commissioner of Social Security,
and against Plaintiff Alice M. Soto.

IT IS SO ORDERED.

**Dated:   February 15, 2008**                     **/s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE